UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| LEXINGTON INSURANCE CO., <br><br> Plaintiff, <br><br> v. <br><br> SANDRA SWANSON, <br><br> Defendant. | No. C05-1614MJP <br><br> ORDER DENYING SWANSON'S MOTION FOR *IN CAMERA* REVIEW AND TO COMPEL BUT GRANTING IN PART SWANSON'S ALTERNATIVE REQUEST TO EXCLUDE, GRANTING MOTION TO QUASH, AND DENYING LEXINGTON'S MOTION FOR PROTECTIVE ORDER |

This matter comes before the Court on Lexington's motion to quash notices and subpoenas for depositions of Chris Neal and Earl Sutherland (Dkt. No. 183), Swanson's renewed CR 37 motion for *in camera* review and to compel production of withheld claims file documents (Dkt. No. 212), and Lexington's motion for protection from Swanson's CR 37 motion (Dkt. No. 198). Having considered the motions, responses, and replies, and all documents submitted in support thereof, the Court orders as follows:

**Background**

The facts of this case have been discussed in the Court's previous order on Swanson's motion to compel Lexington to produce documents in response to Swanson's Request for Production No. 1. (See Dkt. No. 93.) Briefly, Ms. Swanson was the victim of severely negligent care at Issaquah Care Center ("ICC"). Ms. Swanson sued ICC, the parties went to agreed arbitration, and Ms. Swanson

ORDER - 1

obtained an $8 million dollar judgment against ICC. Lexington insured ICC under a policy that contained a $1 million limit per "single medical incident," with a "3-incident, $3 million" cap.

The relevant proceedings began when Swanson sought to enforce the arbitration award against ICC in Washington State superior court. See Swanson v. Issaquah Care Center, LLC, No. 03-2-20442-1SEA. Thereafter, when Swanson amended her complaint to include Lexington as a defendant, Lexington removed the case to federal court. (CV06-005 RSL, Dkt. Nos. 1-3.) Prior to removal of Swanson's state court action, Swanson purchased ICC's choses in action against Lexington at a Sheriff's sale of ICC's assets. (Id., Dkt. No. 2, Ex. 3.) Swanson then amended her complaint to include claims against Lexington as ICC's assignee. (Id., Ex. 8.)

At the same time, the present lawsuit filed by Lexington was pending before this Court. (Dkt. No. 1.) Lexington filed this suit against ICC seeking a declaratory judgment regarding its coverage obligations under the policy. (Id.) The Court consolidated the two federal cases on Lexington's motion, terminated the removed case, and ordered Swanson to file an answer to Lexington's complaint with any counterclaims within sixty days. (Dkt. Nos. 33-34.) On May 17, 2006, Swanson filed an answer with counterclaims that were nearly identical to the claims she raised in the complaint terminated by the motion to consolidate. (Dkt. No. 39.) Swanson alleges that Lexington rejected offers to settle for policy limits, refused to negotiate in good faith, failed to affirmatively explore settlement in a timely manner, failed to evaluate and advise ICC of its liability and exposure in a timely manner, failed to indemnify when the obligation to pay became reasonable or clear, improperly threatened to void coverage, and "otherwise failed to properly and reasonably handle the claims against ICC in good faith." (Dkt. No. 39, at 8-9.)

The pending motions all concern Ms. Swanson's Request for Production (RFP) No. 1, in which she sought production of "all claims related files and documents." Lexington previously withheld production of a number of documents responsive to this RFP based on assertions of attorney-client privilege, work product protection, and/or relevance. The Court addressed Swanson's efforts to obtain these documents in a February 12, 2007 Order. (See Dkt. No. 93.) In that order, the

ORDER - 2

Court divided the withheld documents into three categories: documents withheld on the basis of a "Lexington–ICC" privilege, documents withheld on the basis of a "Lexington-only" privilege, and documents withheld because they contain "reserve information." The Court compelled production of the "Lexington–ICC" privilege documents and the "reserve information" documents. But the Court denied Ms. Swanson's motion to compel production of the "Lexington-only" privilege documents, without prejudice to Ms. Swanson's ability to file a renewed motion to request an *in camera* review of these documents.

Ms. Swanson has now filed that renewed motion as a CR 37 submission, requesting *in camera* review and an order compelling production of the withheld claims file documents. (Dkt. No. 212.) Lexington did not participate in the CR 37 submission, but filed a motion requesting that it not be required to respond. (Dkt. No. 198.) Lexington also filed a motion to quash the deposition notices Swanson served on attorneys Christopher Neal and Earl Sutherland.[1] (Dkt. No. 183.)

**Discussion**

**I.      Swanson's CR 37 Submission re: *In Camera* Review of Withheld Documents**

Lexington has withheld production of a number of documents based on the "Lexington-only" privilege. Lexington's counsel Christopher Neal previously stated that these documents reflect "Lexington's attorney client communications with me or with coverage counsel Earl Sutherland, or were comprised of Lexington's work product regarding coverage or anticipated 'bad faith' claims." (Dkt. No. 84, Neal Decl. ¶ 6.) Swanson requests *in camera* review of the withheld documents and an order compelling production of those documents. Alternatively, Swanson seeks an order barring any reference to the advice or involvement of coverage and monitoring counsel Neal and Sutherland, including any reservation of rights letters they drafted, along with an adverse inference.

---

[1] Mr. Neal is Lexington's current legal counsel and was Lexington's coverage counsel from October 2004 to present. (Dkt. No. 184, Neal Decl. ¶ 3.) During the latter half of 2004, Mr. Sutherland served as monitoring and coverage counsel with respect to the underlying tort action filed by Swanson against ICC. (Dkt. No. 185, Sutherland Decl. ¶ 3.)

ORDER - 3

In her CR 37 submission, Swanson reiterates many of the arguments that she made in her previous motion to compel these claims file documents. To the extent that Swanson's motion is a motion for reconsideration, it is untimely, and is denied. See Local Civil Rule 7(h) (motion for reconsideration must be filed within ten judicial days following the order to which it relates). Therefore, the Court will not reconsider the applicability of Escalante v. Sentry Insurance Co., 49 Wn. App. 375 (1987), will not reconsider whether there is a "bad faith" exception to attorney-client privilege protection of the claims file documents, and will not reconsider whether Lexington waived the privilege by sharing "Lexington-only" privilege documents with AIG Domestic Claims adjusters.

The Court will consider, however, Swanson's argument that all three criteria for implied waiver under the Pappas test are met here. In Pappas v. Holloway, a legal malpractice case, the Washington Supreme Court followed a three-part test to determine whether a party had waived attorney-client privilege: (1) assertion of the privilege was the result of some affirmative act, such as filing suit, by the asserting party; (2) through this affirmative act, the asserting party put the protected information at issue by making it relevant to the case; and (3) application of the privilege would deny the opposing party access to information vital to his defense. 114 Wn.2d 198, 207 (1990) (adopting three-part test first articulated in Hearn v. Rhay, 68 F.R.D. 574 (E.D. Wash. 1975)). In the Court's February 12 Order, the Court suggested (without deciding) that the first criteria had been satisfied because Lexington took the affirmative act of seeking a declaratory judgment that it "did not commit any act of 'bad faith' claims handling (or allegedly related acts) in the administration of the claim." (See Dkt. No. 93, at 12.) But the Court concluded that the second and third prongs had not been met. Swanson argues here that the second and third prongs are met because the information sought is "relevant and at issue" and "application of the privilege would deny access to information vital to the defense." (CR 37 Submission, at 9.) Swanson points out that Lexington's adjusters have admitted that the withheld "Lexington-only" advice and information was relevant and used in the actual handling of the claims. (See Dkt. No. 187, Beninger Decl., Ex. 4, Winston Dep., pp. 13-14, 22-23, 28-30, 39-40; Ex. 5, Sobers Dep., pp. 71-72, 172-76, 340.) And Swanson points out that

ORDER - 4

Lexington's hired expert states in his report that the unproduced legal advice was relevant to good faith claims handling and justified Lexington's alleged good faith actions. (See id., Ex. 6, Mandt Rpt., pp. 6-7.) Thus, Swanson argues that Lexington is relying on the "advice of counsel" in defense of Swanson's bad faith claims, and that such reliance on this "advice of counsel" defense waives the privilege under Pappas. (See Dkt. No. 186, Def.'s Resp. to Plf.'s Mot. to Quash, at 1-2.)

Lexington asserts, in conjunction with its motion to quash and its motion for protection, that it is not relying on an "advice of counsel" defense. (Dkt. No. 191, Plf.'s Reply in Support of Mot. to Quash, at 3; Dkt. No. 220, Plf.'s Reply in Support of Mot. for Protection, at 8.) As Lexington explains, "Lexington has not asserted the 'advice of counsel' defense in this case" and "Lexington is not relying upon an 'advice of counsel' defense in this case." (Dkt. No. 220, Plf.'s Reply in Support of Mot. for Protection, at 8.) Because Lexington is not relying on "advice of counsel," Lexington has not put the withheld documents at issue by making them relevant to the case. See Pappas, 114 Wn.2d at 207. Because Lexington has not impliedly waived its attorney-client privilege, the Court will not order production of the withheld "Lexington-only" privilege documents. *In camera* review is unnecessary.

Lexington argues that a client's reliance on advice of counsel does not effect a waiver of privilege "unless the substance of that advice is revealed and will be used as a defense." (Dkt. No. 191, Plf.'s Reply in Support of Mot. to Quash, at 3.) The Court disagrees. A number of courts have concluded that an insurer waives the attorney-client privilege between it and its coverage counsel when the insurer, in response to a bad faith action, implicitly relies on counsel's legal advice as a justification for non-payment of claims, even where the insurer never reveals the substance of the legal advice given. See State Farm Mutual Auto. Ins. Co. v. Lee, 13 P.3d 1169, ¶ 23 (Ariz. 2000); Tackett v. State Farm Fire & Casualty Ins. Co., 653 A.2d 254, 260 (Del. 1995). In Tackett, the Delaware Supreme Court held that "[w]here ... an insurer makes factual assertions in defense of a claim which incorporate, expressly or implicitly, the advice and judgment of its counsel, it cannot deny an opposing party an opportunity to uncover the foundation for those assertions in order to

ORDER - 5

contradict them." 653 A.2d at 259. In that bad faith action, the Court concluded that the insurer waived the privilege when, in response to a discovery request that it set forth factors in support of its claim of reasonable justification for non-payment of the claim, it relied upon the claim superintendent's affidavit and the claim file which both, the insurer asserted, showed "routine handling" of the claim. Id. at 260. Even though the insurer never injected its counsel's actual advice, because the insurer had "alleged particularized facts that implicitly relied upon communications with counsel contained in the [insureds'] file," and because the insureds would be unable to challenge the insurer's assertion of good faith without access to the entire claim file, the insurer could not shield itself from disclosure of the complete advice of counsel relevant to the handling of the claim. Id.

Lee was a bad faith action in which a class of policyholders of State Farm Mutual Automobile Insurance Company ("State Farm") sought discovery of files and other documents relating to State Farm's rejection of certain "stacking" claims. Id. at ¶ 1. State Farm asserted that its conduct in handling these claims was both objectively and subjectively reasonable and in good faith "because of what its policies, the statute and the case law actually said (not what State Farm's lawyers said they said), and because of what its personnel actually knew and did (not what State Farm's lawyers told them to do)." Id. at ¶ 13. The Arizona Supreme Court explicitly addressed the question of whether and when this kind of assertion, "short of an express advice-of-counsel defense," waives the privilege. Id. ¶ 17. The Court held that under the Hearn test, where "the litigant claiming the privilege relies on and advances as a claim or defense a subjective and allegedly reasonable evaluation of the law — but an evaluation that necessarily incorporates what the litigant learned from its lawyer — the communication [between the insurer and its counsel] is discoverable and admissible." Id. at ¶ 15. Thus, even though State Farm never asserted an "express advice-of-counsel defense," State Farm waived the privilege by asserting that it acted reasonably because of what it did to educate itself about the law, when its investigation of and knowledge about the law included information it obtained from its lawyers. Id. at ¶ 23.

ORDER - 6

1    The Court agrees with the reasoning in <u>Tackett</u> and <u>Lee</u>, and disagrees with Lexington's argument that it only waives the privilege as to communications between Lexington and its counsel if Lexington asserts as a defense the actual attorney advice given. If Lexington asserts as a defense the actual advice given by Lexington's attorneys to Lexington, <u>or</u> if Lexington refers to or attempts to put into evidence any suggestion that Lexington's adjusters sought, obtained, or relied on coverage counsel's advice, Lexington waives the privilege. Therefore, Lexington may not refer to or proffer any evidence regarding any advice given by Lexington's attorneys, or regarding any involvement those attorneys may have had in counseling Lexington's adjusters. Likewise, Lexington's experts may not testify regarding the <u>fact</u> that Lexington's adjusters sought, obtained, and/or relied on advice from coverage counsel. If Lexington wishes to defend itself against Swanson's bad faith claim by pointing to the fact that its adjusters sought, obtained, or relied on the advice of counsel, even if Lexington does not reveal the advice given, Lexington waives the privilege. To hold otherwise would be to allow Lexington to use its privilege as both a sword and a shield. See <u>Pappas</u>, 114 Wn.2d at 208; <u>see also</u> <u>Chevron Corp. v. Pennzoil Co.</u>, 974 F.2d 1156, 1162 (9th Cir. 1992) ("The privilege which protects attorney-client communications may not be used as a sword and a shield.").

The Court does not, however, agree with Swanson that Lexington should be barred from referring to its reservation of rights letter, or that the assertion of privilege allows the fact finder to draw an adverse inference regarding the matter that the witness refuses to reveal. Swanson has not cited any case in which a court held that issuance of a reservation of rights letter waives the privilege between the insured and its insurer. And Swanson also does not cite any compelling authority for her assertion that the Court should instruct the jury to draw an adverse inference regarding Lexington's refusal to disclose the privileged documents. The case cited by Swanson on this point — <u>Ikeda v. Curtis</u>, 43 Wn.2d 449 (1953) — is a Fifth Amendment privilege case. In that case, the Washington Supreme Court held that "[w]hen a witness in a civil suit refuses to answer a question on the ground that his answer might tend to incriminate him . . . the trier of facts in a civil case is entitled to draw an

ORDER - 7

inference from his refusal to so testify." Ikeda, 43 Wn.2d at 458.  That holding is inapplicable outside of the context of the Fifth Amendment privilege against self-incrimination.

In conclusion, Lexington states that it is not asserting an "advice of counsel" defense. Because "advice of counsel" is not at issue here, Lexington has not impliedly waived its attorney-client privilege, and Swanson may not obtain the "Lexington-only" privilege documents.  Thus, Swanson's motion for *in camera* review and to compel the withheld claims file documents is DENIED.  But the Court GRANTS IN PART Swanson's alternative request that the Court bar any reference or evidence of any coverage or monitoring counsel advice or involvement.  Lexington may not refer to the actual advice of counsel, or to the fact that adjusters sought, obtained, or received, advice of counsel.

**II.    Motion to Quash**

Lexington moves to quash the notice and subpoena for deposition of Christopher Neal and subpoena duces tecum, and the notice and subpoena for deposition of Earl Sutherland and subpoena duces tecum.  Lexington requests that the Court enter an order quashing these documents because (1) the subpoenas seek discovery of the "Lexington-only" privileged information, (2) procedural defects in the service of these subpoenas render them invalid, and (3) Defendant Swanson seeks to depose these attorneys after the discovery deadline.  The main issue underlying this motion is whether Swanson may obtain, through subpoenas served on Mr. Neal and Mr. Sutherland, the at-issue privileged information.  Because Lexington is not relying on an "advise of counsel" defense, and because Swanson may not obtain the "Lexington-only" privileged information, the motion to quash is GRANTED.

**III.   Motion for Protection**

Finally, Lexington argues that it should not have to respond to Swanson's CR 37 motion. Lexington argues the CR 37 motion is defective because (1) Swanson failed to confer before serving the document on Lexington, (2) it contains an evidentiary motion (i.e., the adverse inference argument) that is not subject to the CR 37 process, and (3) the deadline for discovery motions had

ORDER - 8

passed when Defendant served her document.[2] Swanson argues that Lexington should have responded and requests terms.

Regardless of whether Swanson's CR 37 submission was procedurally or substantively defective, Lexington was not authorized to withhold a response. Local Civil Rule 37(B)(iii) states that "[w]ithin five judicial days of receipt of the CR 37 submission from the moving party, the opposing party <u>shall serve a rebuttal</u> to the moving party's position for each of the disputed discovery requests identified in the motion." (Emphasis added.) Lexington could have included its objections to the CR 37 submission in the body of its response, thereby reducing the number of motions filed with the Court. Responding to the CR 37 submission would have been the proper course. Therefore, the motion for protection is DENIED.[3] But the Court DENIES Swanson's motion for terms. Given the procedural issues surrounding these three related motions, Lexington's failure to respond to the CR 37 submission does not warrant sanctions.

## Conclusion

Swanson has filed a renewed motion for *in camera* review and to compel the "Lexington-only" privileged documents in the claims file. The Court DENIES Swanson's request for *in camera* review and to compel. But the Court GRANTS IN PART Swanson's alternative request that the Court prohibit Lexington from referring to or proffering any evidence regarding any advice given by Lexington's attorneys, or regarding any involvement those attorneys may have had in counseling Lexington's adjusters. Lexington may not rely on the advice given by its coverage or monitoring counsel, or the fact that such advice was given, in defending itself against Swanson's bad faith claim.

---

[2] For these same reasons, Lexington moves to strike Swanson's CR 37 submission. (<u>See</u> Dkt. No. 220, at 2.) The Court will not strike the CR 37 submission. The Court implicitly authorized Swanson to file her motion after the discovery motions deadline at oral argument on May 10, 2007. (<u>See</u> Dkt. No. 213-2.) It also appears from the record that the parties did confer on this motion numerous times before Swanson served the submission on Lexington. (<u>See</u> Dkt. No. 213, Beninger Decl. ¶¶ 209.) And Swanson's inclusion of the adverse inference argument does not warrant striking the motion.

[3] Because the Court renders a decision on the issues presented in the CR 37 submission, and because Lexington was able to respond to that submission through arguments made in its motion to quash, this motion is technically moot.

ORDER - 9

Given the Court's decision on the privilege issues, the Court GRANTS Lexington's motion to quash the notices and subpoenas served on Messrs. Neal and Sutherland.  And the Court DENIES Lexington's request for protection from Swanson's CR 37 submission.

The Clerk is directed to send copies of this order to all counsel of record.

Dated: July 23rd, 2007.

Marsha J. Pechman
United States District Judge

ORDER - 10