UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

LEXINGTON INSURANCE CO.,

        Plaintiff,

v.

SANDRA SWANSON,

        Defendant.

No. C05-1614MJP

ORDER GRANTING DEFENDANT SWANSON'S MOTION FOR PARTIAL SUMMARY / DECLARATORY JUDGMENT REGARDING LIMITS OF LIABILITY NOT REDUCED BY SIR OR UNINCURRED COSTS

This matter comes before the Court on Defendant Swanson's request, both on behalf of herself and as assignee of Issaquah Care Center, for partial summary / declaratory judgment establishing her rights under the Lexington insurance policy to the undisputed $1 million limits of liability without reduction for payment of the $100,000 SIR and the withholding of $96,556 in unincurred costs and expenses. (Dkt. No. 181.) Lexington opposes the motion, but admits that it owes Swanson the $96,556 in unincurred costs and expenses. (Dkt. No. 194.) Swanson filed a reply (Dkt. No. 210) and Lexington filed a surreply (Dkt. No. 223.) On August 3, 2007, the Court heard oral argument on the motion, and ruled orally at that hearing. Having considered all of the papers filed by the parties, and consistent with the Court's oral ruling, the Court ORDERS as follows:

    1) The Court finds that Lexington admits that it erroneously deducted $96,556 from the payment owed Ms. Swanson.[1]

---

[1] The parties informed the Court that Lexington paid Ms. Swanson this amount recently. The parties dispute whether Lexington paid the correct amount in interest. The Court will not rule, without further documenting evidence, the proper interest payment amount.

ORDER - 1

2) The relevant policy for payment of any judgment against ICC arising from Ms. Swanson's claims fall under the policy issued by Lexington Insurance Company, policy #6790096. For the purposes of this motion, the parties agree that the policy is a $1 million policy, and that the policy includes a $100,000 self-insured retention (SIR) endorsement.[2] In January 2006, Lexington tendered to Ms. Swanson payment of the remaining policy limits, minus a $50,000 reserve for defense costs, in the amount of $580,000. (Beninger Decl. ¶ 3.)

3) The SIR endorsement states, in relevant part:

A. The First Named Insured shall be responsible for the Self Insured Retention amounts shown below. Expenses incurred by the First Named Insured in investigating and defending claims and suits are included within the Self Insured Retention.

\*\*\*

B. We will pay damages only in excess of the Self Insured Retentions stated below. We will not be responsible for payment of amounts within the Self Insured Retentions, which the First Named Insured will be obligated to pay.

C. Our rights and duties with respect to the defense and settlement of claims applies only when an occurrence or medical incident is excess of the Self Insured Retention stated below and only for that portion of the loss which is excess of the Self Insured Retention.

D. The Limits of Liability as stated in this policy will not be reduced by the payment of damages and expenses paid within the Self Insured Retention.

(Dkt. No. 182-2.) Moreover, the policy is a "wasting" policy; that is, defense costs reduce the overall amount available under the policy.

4) This policy language is unambiguous. Under the policy, the $1 million policy limits sit on top of, and are not reduced by, the $100,000 SIR, effectively making this a $1.1 million policy covering both indemnity and defense costs. Here, ICC incurred $100,000 in defense costs, ICC could not afford to pay them, and Lexington voluntarily chose to pay those defense costs. Lexington was not obligated to do so under the policy, because those first $100,000 in defense costs fell within the

---

[2] The Court makes no conclusion as to whether it is the $1 million policy limit, or $3 million policy limit which should actually be at stake here.

ORDER - 2

$100,000 SIR.  And the clear language of Section D of the SIR Endorsement in the policy does not allow Lexington to deduct that $100,000 from the $1 million policy limits.

5)  Even if the policy language were ambiguous, the Court would conclude that the policy does not allow Lexington to deduct the first $100,000 in defense costs from policy limits.  All of Lexington's adjusters and its Rule 30(b)(6) witness stated in deposition that the limits of liability are not reduced by payment of any of the damages and expenses incurred and paid under the SIR. (See Beninger Decl., Ex. 3, Meehan dep., pp. 31-33; Beninger Reply Decl., Ex. 1, Winston Dep., p. 46, 342; Ex. 2, Sobers Dep., 181-83.)  Moreover, the year after this policy was issued, Lexington changed the language in the SIR endorsement to state that the "Limits of Insurance shall be reduced by the payment of damages and expenses paid within the Self-Insured Retention."  Lexington would not have needed to make such a change to its policy if the former language allowed it to reduce policy limits by amounts paid within the SIR.  Finally, in the insurance context, public policy dictates that the contracting parties should bear the cost of this type of dispute.  Ms. Swanson should not be expected to shoulder the burden of ICC's inability to make its SIR payments.

Therefore, because Lexington may not reduce its policy limits by the $100,000 Lexington voluntarily paid to cover defense costs incurred by ICC under the SIR, Lexington must pay Ms. Swanson $100,000 plus interest within ten (10) days of this order.  Ms. Swanson's motion for partial summary judgment is GRANTED.

The Clerk is directed to send copies of this order to all counsel of record.

Dated: August 3rd, 2007.

_____
Marsha J. Pechman
United States District Judge